**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**James Louis MONROE, Appellee.**

**No. 14–96–1512–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 12, 1998.

Stacy Suzette Billedo, Houston, for appellant.

Buddy Stevens, Angleton, for appellee.

Before Justices ANDERSON, EDELMAN and SEARS.*

## OPINION

ANDERSON, Justice.

Appellant, the Texas Department of Public Safety (DPS), appeals from a final order of the county court at law reversing an administrative order authorizing suspension of appellee's, James Louis Monroe's (Monroe), driver's license. In four points of error, the DPS contends the county court at law improperly reversed the administrative decision to suspend Monroe's license because: (1) the administrative record was not presented into evidence in the county court, as required by statute; (2) the administrative law judge properly denied Monroe's motion to dismiss the suspension proceeding; (3) the administrative law judge properly admitted the Breath Test Technical Supervisor's Affidavit; and (4) the administrative law judge properly admitted the arresting trooper's testimony into evidence. We reverse the county court's judgment and render judgment affirming the administrative order suspending Monroe's driver's license.

### Background

On January 27, 1996, DPS trooper Salcido observed Monroe driving on Highway 36 in Brazoria County. The trooper stopped Monroe for erratic driving and for driving eighty-five miles per hour in a posted fifty-five miles per hour zone. As he approached the car, the trooper smelled a strong odor of an alcoholic beverage coming from inside the vehicle and observed that Monroe had glassy eyes. The trooper noticed that as Monroe walked to the back of his car, he swayed and had problems walking. Based on these observations, the trooper arrested Monroe for driving while intoxicated. After the trooper

---

* Senior Justice Ross A. Sears sitting by assignment.

gave Monroe the statutory DWI warning, Monroe agreed to give a breath specimen. The breath test reflected Monroe's breath alcohol concentrations to be 0.173 and 0.171, which levels established Monroe as "intoxicated" as that term is defined in Section 49.01(2)(B) of the Penal Code. *See* TEX. PENAL CODE ANN. § 49.01(2)(B) (Vernon 1994). Because Monroe's license was thus subject to suspension,[1] he timely requested an administrative hearing on the suspension.

On February 21, 1996, Monroe sought to obtain discoverable documents held by the DPS by filing a request for production with the DPS. The DPS responded to this request on March 1, 1996 by providing Monroe with the five exhibits that it planned to admit at the suspension hearing. Among the documents the DPS provided was the Breath Test Technical Supervisor's Affidavit (DIC-56.[2] When the DPS attempted to admit all five of the exhibits at the hearing, Monroe objected stating the DPS had not complied with Texas Administrative Code section 159.13 which requires the production of the documents requested within five days of the request. *See* 1 TEX. ADMIN. CODE § 159.13 (West 1997). The administrative law judge sustained the objection as to four of the exhibits. However, the judge admitted the DIC-56 into evidence because the DPS delivered it to Monroe on the same day the DPS received it, and thus well within the Section 159.13 five-day rule.

Based on the documentary evidence and the testimony of the trooper, the administrative law judge found the trooper had reasonable suspicion to stop Monroe for traveling eighty-five miles per hour in a posted fifty-five miles per hour zone and probable cause to arrest Monroe for DWI. The judge concluded that the DPS proved the issues set forth in Section 524.035 of the Transportation Code and authorized suspension of Monroe's license for sixty days.

Monroe appealed the order of the administrative law judge to the county court at law. In his Original Petition to Set Aside Administrative Order Suspending License, Monroe alleged there was no factual or legal basis upon which his license should be suspended and that he was denied due process of law. After a hearing, the county court at law issued an Order on Review of Administrative Proceedings reversing the order of the administrative law judge. The DPS now appeals the order of the county court at law.

### Standard of Review of State

### Agency Action

■ The standard of judicial review of state agency action is set forth in Section 2001.174 of the Administrative Procedure Act (APA). *See Texas Dep't of Pub. Safety v. Cantu*, 944 S.W.2d 493, 495 (Tex.App.-Houston [14th Dist.] 1997, no writ). The APA provides, in pertinent part, as follows:

[A] court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

---

1. DPS trooper Salcido gave Monroe notice of driver's license suspension after Monroe's breath test indicated an alcohol concentration of a level specified by Penal Code Section 49.01(2)(B). Section 524.011 of the Transportation Code, which provides for delivery of such notice by the arresting officer, is set out in note 3 below.

2. The DIC-56 reflected, among other things, Monroe's breath alcohol concentration levels after he had been arrested and taken to the Brazoria County jail.

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE ANN. § 2001.174(2)(A) (Vernon Pamph.1998). Thus, to reverse the decision of the administrative law judge, the county court at law must conclude the findings of the administrative law judge were erroneous for one of the reasons enumerated above and the appellant's substantial rights were thereby prejudiced. *See Cantu,* 944 S.W.2d at 495.

■ The APA also authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E) (Vernon Pamph.1998); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex.1984). The reviewing court must presume that the agency's decision is supported by substantial evidence. *Id.* at 453. Substantial evidence requires only more than a mere scintilla. *See R.R. Comm'n of Texas v. Torch Operating Co.,* 912 S.W.2d 790, 792 (Tex.1995). The evidence in the record may preponderate against the agency's decision and nevertheless amount to substantial evidence. *See id.; Lewis v. Metro. Sav. & Loan Ass'n,* 550 S.W.2d 11, 13 (Tex.1977). The issue before the reviewing court is not whether the agency reached the correct conclusion but whether some reasonable basis exists in the record for the agency's action. *See id.* "We will sustain the agency's action if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Texas Dept. of Pub. Safety v. Latimer,* 939 S.W.2d 240, 244 (Tex.App.—Austin 1997, no writ).

To uphold a license suspension, an administrative law judge must find the DPS proved the following issues by a preponderance of the evidence at an administrative license suspension hearing: (1) whether reasonable suspicion to stop or probable cause to arrest the driver existed; and (2) whether the driver was operating a motor vehicle in a public place and had an alcohol concentration of a level specified by Section 49.01(2)(B) of the Penal Code. *See* Act of May 23, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1599, *amended by* Act of Sept. 1, 1997, 75th Leg., R.S., ch. 1013, § 27, 1997 Tex. Gen. Laws 3696. In this case, the DPS presented substantial evidence to support each of these elements, thereby justifying the administrative order suspending Monroe's license. Nevertheless, the county court at law reversed the administrative order.

### Admission of Administrative Record into Evidence

■ In its first point of error, DPS alleges the county court at law erred in reversing the decision of the administrative law judge because the administrative record was not before the court. The APA provides that a party seeking judicial review of an agency's decision, "shall offer, and the reviewing court shall admit, the state agency record into evidence as an exhibit." TEX. GOV'T CODE ANN. § 2001.175(d) (Vernon Pamph.1998); *Texas Health Enters., Inc. v. Texas Dep't of Human Services,* 949 S.W.2d 313 (Tex.1997). "This provision is mandatory." *Texas Dep't of Public Safety v. Lavender,* 935 S.W.2d 925, 929 (Tex.App.—Waco 1996, writ denied). In cases reviewed under the APA, the trial court sits without a jury and reviews only the administrative record. TEX. GOV'T CODE ANN. § 2001.175(e) (Vernon Pamph.1998); *Nueces Canyon Consol. Indep. Sch. Dist. v. Central Educ. Agency,* 917 S.W.2d 773, 776 (Tex. 1996). An appellant may bring an administrative record in an appeal governed by the APA to an appellate court as part of the statement of facts or transcript *so long as a court reporter's certificate or other evidence demonstrates the trial court admitted the record. See Nueces Canyon,* 917 S.W.2d at 776 (emphasis added).

■ In this point of error the DPS is contending that Monroe failed to offer and secure admission of the administrative record into evidence. Although a certified transcript of the administrative record appears in the record before this Court, there is no evidence Monroe offered the record of the administrative hearing at the hearing held by

the county court below in connection with his Petition to Set Aside the Administrative Order. The record here, nevertheless, reflects the administrative record was before the county court at law. Monroe repeatedly referred to the record in his argument to the county court at law. The DPS did not object to his references. Also, Monroe directed the court's attention to a particular page in the record that was tabbed, and both attorneys and the court discussed that particular document. Further, the final order of the county court at law reversing the suspension order states the court considered "the pleading and evidence" and argument of counsel. The only evidence before the court was in the administrative record. No new evidence was admitted in the county court at law. Thus, "evidence" refers to the administrative record. The statement of facts and the court's order leave no doubt that both parties relied on the administrative record in their arguments and the court based its decision upon the administrative record, as the APA requires.

"Appellate courts have repeatedly held that evidence that is not objected to and that the trial court and the parties treat as admitted is, for all practical purposes, admitted." *Texas Health Enters., Inc.*, 949 S.W.2d at 314. Because there is some evidence the county court at law considered the record of the administrative hearing, we find the parties treated the record as admitted and this court will consider such record on appeal. Accordingly, we overrule the DPS's first point of error.

### Due Process

■ In its second point of error, the DPS alleges the county court at law erred by implicitly holding that Monroe had been denied due process of law when his motion to dismiss was denied. In his Petition to Set Aside the Suspension Order, Monroe claimed the order of suspension deprived him of due process of law. He made no specific allegations of how the order deprived him of due process. A driver's license is not a right, but a privilege. *See Texas Dep't of Pub. Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex.1985); *Ex parte Tharp*, 912 S.W.2d 887, 890 (Tex. App.—Fort Worth 1995), *aff'd*, 935 S.W.2d 157 (Tex.Crim.App.1996). "In fact, the property interest involved does not even rise to the level that would require a right to appeal a revocation, absent statutory authority." *Ex parte Tharp*, 912 S.W.2d at 890. Once a driver's license is issued, however, proper constitutional safeguards must be followed before revoking that license. *See id.*

The ultimate test of due process of law in an administrative hearing is the presence or absence of rudiments of fair play long known to our law. *See State v. Crank*, 666 S.W.2d 91, 94 (Tex.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984); *Guerrero–Ramirez v. Texas State Bd. of Med. Examiners*, 867 S.W.2d 911, 916 (Tex.App.—Austin 1993, no writ). The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and an opportunity to meet it. *See Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The basic elements of due process at the agency level are notice, hearing and an impartial trier of facts. *See Texas State Bd. of Dental Examiners v. Silagi*, 766 S.W.2d 280, 284 (Tex.App.-El Paso 1989, writ denied).

The Texas Transportation Code provides specific procedures to guarantee the basic elements of due process when suspending a driver's license. First, the driver must be given notice of the suspension of his license.[3] The driver may then request a hearing on the suspension. *See* TEX. TRANSP. CODE ANN. § 524.031 (Vernon Pamph.1998)[4]. The hear-

---

**3.** Transportation Code Section 524.011 provides, in part:

> If a person arrested for an offense ... submits to the taking of a specimen of breath or blood and an analysis of the specimen shows the person had an alcohol concentration of a level specified by Section 49.01(2)(B), Penal Code, the arresting officer shall: serve ... notice of driver's license suspension by personally delivering the notice to the arrested person....

Act of May 23, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1596, *amended by* Act of June 11, 1997, 75th Leg., R.S., ch. 609, § 1, 1997 Tex. Gen. Laws 2145, *amended by* Act of June 19, 1997, 75th Leg., R.S., ch. 1013, § 22, 1997 Tex. Gen. Laws 3694, 3695.

**4.** All references in this opinion to sections of the Transportation Code and the Penal Code are to

ing shall be held no earlier than the eleventh day after the driver receives notice. *See id.* § 524.032(a). A request for a hearing stays suspension of the person's driver's license until the date of the final decision by an administrative law judge. *See id.* § 524.032(d). An administrative law judge employed by the State Office of Administrative Hearings shall hold the hearing at a specific location or by telephone conference call, with the consent of the person requesting the hearing. *See id.* § 524.034.

■ The record reflects that Monroe took full advantage of the procedural safeguards outlined above, and thus was not deprived of due process of law. Monroe stated in his Petition to Set Aside Order of Suspension that he received notice of the order of suspension from the DPS. He requested a hearing by telephone conference call to contest the suspension. He also made a request for production of documents held by the DPS. The administrative law judge conducted the hearing by telephone conference call on March 6, 1996. She announced the hearing would be "conducted pursuant to the provisions of the Administrative Procedure Act, the rules of the Department of Public Safety, and the rules of the State Office of Administrative Hearings." Both Monroe and the DPS were represented by counsel. The DPS offered five documents into evidence, but the administrative law judge only admitted one over objection. The DPS also presented the live testimony of trooper Salcido, the arresting officer. Monroe presented no evidence and did not cross-examine the DPS witness. After hearing argument from lawyers for both parties, the judge closed the hearing. She issued the Administrative Decision and Order on March 6, 1996. Monroe filed his Petition to Set Aside the Order of Suspension in the county court at law on March 12, 1996. The evidence in the record before us reflects that Monroe was accorded notice, hearing, and an impartial fact finder in connection with his license suspension, the basic elements of due process at the agency level. *See Silagi,* 766 S.W.2d at 284. Therefore, inasmuch as Monroe was not deprived of due process of law, the county court at law erred

those sections as they were in effect at the time

in reversing the administrative decision and setting aside the order of suspension based on an implied finding that Monroe was denied due process of law. The DPS's second point of error is sustained.

### Requests for Production

In points of error three and four, the DPS asserts the county court at law erred in reversing Monroe's license suspension based on an implied finding that the administrative law judge improperly admitted DIC–56 into evidence, and improperly permitted the live testimony of the arresting officer. These two points of error are based on Monroe's contention in the county court that because the DPS did not comply with the five day response requirement of Section 159.13 of Title 1 of the Texas Administrative Code for some of its trial exhibits, the DPS's other evidence, consisting of the DIC–56 and trooper Salcido's testimony, was improperly admitted.

Section 159.13 of Title 1 of the Texas Administrative Code provides:

> If defendant submits a written request [for non-privileged documents held by DPS] accompanied by an amount sufficient to pay for copying charges . . ., the department shall furnish copies of such documents or records to the defendant *within five days of receipt of the request.* Any document or record that has not been made available by the department to the defendant pursuant to request shall not be introduced into evidence.

1 TEX. ADMIN. CODE § 159.13 (West 1997) (emphasis added). In his request for production, Monroe asked the DPS to produce all documents in its possession relating to the suspension of Monroe's driver's license. The DPS responded to this request by providing the documents which it possessed, namely, exhibits one, two, three, and five. The DPS, however, did not produce the documents until eight days after the request was made, in violation of the five day rule within Section 159.13. *See id.* Consequently, the administrative law judge did not allow the DPS to admit those four exhibits. The administra-

of Monroe's arrest.

tive law judge, however, did allow the DPS to admit the DIC–56 into evidence, as well as the live testimony of the arresting officer, trooper Salcido.

Section 159.13 specifically provides that documents and records which the DPS possesses and does not provide to the defendant within five days of a request shall be excluded from evidence. *See id.* Section 159.13, however, *does not state that all other evidence later obtained should also be excluded.*[5] On the contrary, it provides that a request for documents and records which are not in the possession of DPS at the time of the request shall be denied by the Administrative Law Judge. *See id.* At the time Monroe made his request, the DPS did not possess the DIC–56. The DPS received the DIC–56 on March 1, 1996, and forwarded it to Monroe on the same day; therefore, the DPS produced the document within the five day period specified in Section 159.13.

Likewise, Monroe's objection to the admission of the trooper's testimony under Section 159.13 is without merit. Section 159.13, by its terms, only applies to documents and records. *See id.* Because the live testimony of the trooper is neither, the administrative law judge properly allowed the testimony.

Because the administrative law judge properly admitted the DIC–56 and the trooper's testimony at Monroe's license suspension hearing, and that evidence constituted substantial evidence supporting the order suspending Monroe's license, we reverse the judgment of the county court at law and render judgment affirming the administrative order of suspension.

---

5. In the comments to the adopted rules for Administrative License Revocation (ALR) hearings, the State Office of Administrative Hearings (SOAH) stated:

> With regard to the penalty for the department's failure to produce documents or records to the defendant upon request, one commenter suggested that barring the department from introducing such information into evidence was not a sufficient deterrent and recommends harsher penalties, e.g., case dismissal in egregious circumstances. *SOAH disagrees that the penalty is inadequate* and did not follow the commenter's recommendation. ALR proceedings are not criminal and the penalty provided, exclusion of such evidence, is suitable in an administrative action.

19 TEX. REG. 10221, 10223 (1994) (emphasis added).