**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**Frank BARTOW, Jr., Appellee.**

No. 03–97–00650–CV.

Court of Appeals of Texas, Austin.

May 27, 1999.

Released for Publication June 17, 1999.

John C. West, Jr., Chief of Legal Services, Loren E. Svor, Asst. Gen., Counsel, Austin, for Appellant.

Keith S. Hampton, Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices JONES and YEAKEL.

J. WOODFIN JONES, Justice.

Appellant Texas Department of Public Safety challenges a county court at law order reversing an administrative order sustaining the suspension of appellee Frank Bartow, Jr's driver's license. *See* Tex. Transp. Code Ann. §§ 724.042, .043 (West Supp.1999). The Department contends the trial court erred in reversing the administrative order because the necessary fact findings were supported by substantial evidence. We agree and will reverse.

We summarize the undisputed evidence presented at the hearing before the administrative law judge ("ALJ"). Carl Pardinek, a sergeant with the Austin Police Department K–9 unit, testified that on December 4, 1996 at approximately 11:30 p.m., he was training his patrol dog in a field in east Austin when a pedestrian

approached him and reported seeing a man slumped over the steering wheel of a vehicle at the nearby intersection of East 12th Street and Chestnut. Sergeant Pardinek drove to the intersection, turned on his emergency lights, and positioned his unmarked police vehicle behind a white Dodge pickup truck sitting at the location described by the pedestrian. Before he could approach the pickup, a woman walked toward the pickup and yelled at the driver to wake up. Sergeant Pardinek testified that the driver did wake up and proceeded to drive eastbound on 12th Street at approximately five miles per hour.

Sergeant Pardinek followed less than five feet behind the truck and eventually signaled the driver to pull over. The truck continued to creep down the street. Sergeant Pardinek testified that when the driver did not respond to his signal, he "bumped" his siren several times and identified himself as police over his PA system. The driver finally stopped. There was no testimony that the truck was being driven recklessly or in any way unlawfully. Sergeant Pardinek testified that he did not believe the driver had violated any traffic laws, but that, based on his experience, he suspected that the driver was intoxicated. He stated that in addition to the slow rate of speed, he noticed that the driver "did sway noticeably within that outer lane of traffic."

Sergeant Pardinek approached the pickup, identified himself as a police officer, and asked the driver to turn off the engine. He testified that the driver took a "full 15 seconds" before turning off his ignition. In response to Sergeant Pardinek's request, the driver identified himself as appellee. Sergeant Pardinek then asked appellee to get out of the vehicle and accompany him to the sidewalk. It was at that time Sergeant Pardinek observed that appellee "swayed as he walked." Sergeant Pardinek also noticed a "moderate odor of alcoholic beverage" on appellee's breath. He then called for a patrol officer to ad-

minister field sobriety tests on appellee, which appellee failed. Appellee's license was subsequently suspended and sustained after a hearing before the ALJ. Appellee appealed the suspension to the county court of law. Following a hearing, the court issued an order reversing the suspension, holding that the evidence "was insufficient to provide substantial evidence that the Department met the requisite burden of proof to establish sufficient temporary suspicion for the stop."

In its only issue presented, the Department argues that Sergeant Pardinek articulated sufficient facts showing that appellee was engaged in activity that was connected to the crime of driving while intoxicated, thereby establishing reasonable suspicion under Texas law to warrant the initial stop. Pursuant to the Administrative Procedure Act, a reviewing court must test the agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the evidence in the record as a whole. Tex. Gov't Code Ann. § 2001.174(2)(E) (West Supp. 1999); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984); *Texas Dep't of Pub. Safety v. Latimer*, 939 S.W.2d 240, 244 (Tex.App.—Austin 1997, no writ). When the facts established are undisputed, the question of whether they constitute reasonable suspicion is reviewed de novo. *See Guzman v. State*, 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997).

"[A]n officer may stop and briefly detain a citizen for investigative purposes if the officer, in light of his experience, has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Woods v. State*, 970 S.W.2d 770, 773 (Tex.App.—Austin 1998, pet. ref'd) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Reasonable suspicion means more than a hunch or suspicion. *Id.* (citing *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997)). The activity need not constitute a

crime in itself to justify the detention; however, the detaining officer must point to something which would lead a reasonable person to believe that the detainee was engaged in a criminal act. *See Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Crim. App.1992).

 Sergeant Pardinek testified that based on his experience he suspected appellee was driving drunk because "his speed was right at five miles an hour and within his lane, he did sway noticeably within that outer lane of traffic," and that these actions created a suspicion for him to stop the vehicle. In conjunction with the other evidence regarding the pedestrian report and the length of time the vehicle remained at the intersection without moving, this testimony provided sufficient specific facts to support the ALJ's finding that appellee's temporary detention was lawful. Although none of the acts in which appellee engaged prior to the initiation of the stop were inherently illegal, together they were sufficient to create a reasonable suspicion that some activity out of the ordinary was occurring or had occurred. *See, e.g., Fox v. State,* 900 S.W.2d 345, 346 (Tex.App.—Fort Worth 1995) (officer followed defendant for four miles, during which time his speed fluctuated between forty and fifty-five miles per hour four times and he was weaving within his lane), *pet. dism'd per curiam,* 930 S.W.2d 607 (Tex.Crim.App.1996); *Raffaelli v. State,* 881 S.W.2d 714, 716 (Tex.App.—Texarkana 1994, pet. ref'd) (reasonable suspicion existed when officer observed defendant weaving within his own lane and driving at a "high" rate of speed); *Barraza v. State,* 733 S.W.2d 379, 380 (Tex.App.—Corpus Christi 1987) (reasonable suspicion existed when officer observed defendant weaving within his own lane and making two improper turns), *aff'd,* 790 S.W.2d 654 (Tex. Crim.App.1990); *Miffleton v. State,* 728 S.W.2d 880, 883 (Tex.App.—Austin 1987) (reasonable suspicion existed based on defendant's rapid acceleration, weaving, and excessive speed), *aff'd,* 777 S.W.2d 76 (Tex.

Crim.App.1989). Considering the totality of the circumstances in this case, we conclude that the record contained substantial evidence to support the ALJ's decision that appellee's conduct was suspicious enough to warrant police intrusion at the time the stop was made. *See Hulit v. State,* 982 S.W.2d 431, 438 (Tex.Crim.App. 1998).

The order of the trial court is reversed and judgment is rendered upholding the administrative suspension of Bartow's driver's license.